No. 41,636

MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant,* v. THE CITY OF SAVONBURG AND THE SHIPPERS AND PATRONS OF SAVONBURG AGENCY STATION, *Appellees.*

(348 P. 2d 1015)

Opinion filed January 23, 1960.

Elmer W. Columbia, of Parsons, and William A. Thie, of Denison, Texas, argued the cause, and Herman W. Smith, Jr. and John B. Markham, both of Parsons, and Lloyd W. Jones, of Denison, Texas, were with them on the briefs for appellant.

Stanley E. Toland, of Iola, argued the cause, and Frank W. Thompson and J. D. Conderman, both of Iola, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from an order of the district court holding as unreasonable an order of the State Corporation Commission authorizing the closing of the appellant railroad's station at Savonburg, Allen County, Kansas, as an agency station.

On May 7, 1958, application was made by Missouri-Kansas-Texas Railroad Company to the State Corporation Commission for an order to discontinue its agency station at Savonburg on its line running from Kansas City, Missouri, southward through Allen County and thence to points south in Kansas, Oklahoma and Texas.

The application alleged that the railroad employed an agent at its station at Savonburg, a community of approximately 160 persons, whose duties were to take care of the railroad business, but that the volume of business was and had been for the past several years insufficient to require or justify the maintenance of an open agency station, and that the public convenience and necessity no longer require maintaining an agent; that the expenses incident to the operation of the station and the transportation of shipments to and from the station had exceeded the revenue attributable thereto and resulted in a net operating loss of several thousand dollars annually for the past several years, and that a change in the method of handling business at Savonburg was necessary to conserve revenue, save unnecessary expense, reduce operating expenses, and avoid economic waste.

At the hearing before the commission, witnesses were sworn and evidence taken on behalf of the railroad and the city of Savonburg and shippers and patrons of Savonburg agency station, hereafter referred to as the protestants. The railroad offered evidence relative to each of the issues set forth in the application. The protestants offered testimony concerning the inconvenience to shippers and receivers of freight at a non-agency station.

On June 11, 1958, the commission issued its order authorizing the railroad to discontinue the station as an agency station and to cease rendering express service. The protestants applied for a rehearing which was denied on July 2, 1958, and they perfected their appeal to the district court of Allen County, Kansas.

On December 12, 1958, the district court, after reviewing the commission's record, filed its memorandum decision holding the commission's order was not unlawful, but that it was unreasonable, and vacated and set aside the order and directed the commission to enter an order denying the railroad's application. The railroad has appealed, and specifies the district court erred (1) in finding that the order of the Corporation Commission was unreasonable; (2) in failing to give consideration to the ratio expenses incurred in the railroad operations chargeable to the Savonburg station, and (3) in taking into consideration the effect of the closing of the Elsmore and Stark stations.

At the outset, a preliminary matter is argued by the protestants. During the pendency of the appeal they filed a motion to dismiss upon the ground that it had not been duly perfected. The motion was denied, but leave was granted to renew it upon the hearing of the merits. At the oral argument, counsel for the protestants argued that the commission had acquiesced in the judgment of the district court since it did not file a motion for a new trial, nor appeal from the judgment; that the railroad was not the proper party to take the appeal when the commission did not appeal from the judgment; further, that inasmuch as the commission did not appeal, it became an adverse party to the railroad, and notice of appeal not having been served upon the commission, G. S. 1949, 60-3306 was not complied with and the supreme court did not acquire jurisdiction, hence the appeal should be dismissed. The point is not well taken.

The notice of appeal which was signed by counsel for the railroad, recited that the railroad and the commission both appealed to

the supreme court. It was duly served upon counsel of record for the protestants and proof of service was waived. During the pendency of the appeal, and after the protestants filed their motion to dismiss, the commission filed its motion to qualify the notice of appeal by removing its name as a party appellant. That motion was allowed by this court.

During oral argument, counsel for the railroad stated, and the protestants did not deny, that following the rendition of judgment in the district court, the general counsel for the commission stated that the commission desired to and would join with the railroad in an appeal to the supreme court, but that it preferred the railroad take the initiative in perfecting the appeal.

At the time the commission withdrew as a party appellant, the time had long past when notice of appeal could have been served upon it. The railroad's right to be heard in this court does not depend upon the caprice of the commission, nor may the protestants take advantage of the commission's withdrawal as a party appellant. When the appeal was perfected, the commission was a party appellant and notice of the appeal was not required to be served upon it.

While the right of the commission to appeal alone or join with other appellants is well established (*Atchison T. & S. F. Rld. Co. v. State Corporation Comm.*, 166 Kan. 548, 203 P. 2d 211; *Central Kansas Power Co. v. State Corporation Commission*, 181 Kan. 817, 316 P. 2d 277; *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.*, 182 Kan. 603, 322 P. 2d 715), the fact that the commission was not a party appellant at the time the case was heard in this court does not preclude the railroad from its right to be heard on its specifications of error.

In its order of June 11, 1958, authorizing the railroad to close its station at Savonburg as an agency station, the commission found from the evidence (the findings are numbered for convenience):

(1) "That applicants propose no change in train schedules and passenger service will continue to be furnished upon payment of fares to the train conductor.

(2) "That public use of the facilities and service of the applicant companies during the past three years does not justify the continued maintenance of an agency station at Savonburg, Kansas.

(3) "That public convenience and necessity does not require the services of an agent-telegrapher at said station.

(4) "That the applicant's evidence clearly showed the maintenance of an agency station at Savonburg, Kansas, has been unprofitable to the applicant companies.

(5) "That protestant's testimony indicated the shipping and receiving public of the applicant companies would not be unduly inconvenienced should this joint application be granted and that the period illustrated by the applicant's exhibits was a fair and representative period for this area.

(6) "That to require the applicant companies to continue the agency at Savonburg, Kansas, and to continue furnishing express service thereat, would be an undue burden upon the applicants."

In its memorandum opinion the district court stated that two considerations led it to conclude the order was unreasonable: First, that the commission received and weighed evidence of the railroad's accounting practice of allocating to the expenses of operating the Savonburg station, a percentage of its systemwide expenses applicable to railway operations based upon an operating ratio as to such items as costs of maintaining the property over which traffic moved, maintaining equipment used in moving traffic, soliciting and procuring business, wages of train crews and other employees required to handle the physical movement of traffic, accounting staff to record revenues and expenses and make reports, and taxes on physical properties and the like; and Second, that a reasonable order could scarcely be made without evidence of the effect of closing the Elsmore and Stark stations (3 and 4 miles north and south of Savonburg, respectively,) on May 15, 1958, almost simultaneously with the railroad's application in the present case, and the extent to which the closing of those stations would affect Savonburg.

With respect to the district court's first consideration, it is noted that, of the many facts to be considered in determining the ultimate question whether public convenience and necessity required the maintenance of an agency station at Savonburg, it singled out only one criterion—the commission's fourth finding, that is, whether the station was being operated profitably or unprofitably as an agency station, and held that the order was unreasonable *solely* upon the ground that the commission erroneously admitted and weighed evidence of the fact that transportation costs were necessarily incurred on shipments consigned to and from Savonburg, in addition to direct station expense. In that connection the district court stated:

". . . A consideration of pro rated expenses of the system pertaining to physical facilities is, as the Court finds, clearly erroneous in an action of this kind where the issue of whether or not the Railroad should or should not in the public interest maintain a station agent. . . ."

On this point, in passing upon the protestants' objection to the admission into evidence of the railroad's exhibit showing its accounting practices of allocating systemwide expenses on a pro rata basis, the ruling of the commission is significant and the comment of its chairman is quoted:

"The Commission, of course, looks first at the out-of-pocket expense and the direct saving that is going to be made by the abandonment of the agency and compares it with revenues but we are inclined to believe that these indirect expenses have a bearing on the case and from an accounting standpoint should be considered. Now, how much weight we'll give them is another factor but it isn't a matter to be excluded entirely from the evidence, in my opinion, so the objection will be overruled and the exhibit admitted."

In making its order, it is obvious the commission determined it should consider, first of all, out-of-pocket (station only) expenses, but that indirect (transportation) expenses "have a bearing on the case and from an accounting standpoint should be considered." In other words, transportation expenses were held to be one of many items to be considered, and the commission stated it would give consideration to all items. Thus, the principal question presented is whether the commission improperly considered evidence, over the protestants' objection, of the railroad's systemwide expenses, which were allocated to the Savonburg station on a pro rata basis.

The evidence was undisputed that the closing of the Savonburg station as an agency station would not change train schedules, and passenger service would continue to be furnished (with payment of fares being made to the train conductor); that there would be a caretaker at the station which would be heated and lighted, and that patrons would receive every service they had previously received with the only inconvenience being in the manner of billing outgoing carload and less-than-carload shipments which would be handled by the agent at Erie, Kansas, by telephone, and the railroad would pay the telephone expense, and on less-than-carload incoming shipments they would receive better service through local and interstate trucks than they had received in the past. Concerning the frequency of inbound and outbound shipments, the record indicates that in 1957 the railroad handled an average of only 2½ carload shipments a month and 13.7 less-than-carload shipments a month. Further, that the general duties of the agent at Savonburg, including the billing of carload and less-than-carload shipments, would not consume more than one hour of the agent's average daily time and even at peak seasons, not more than two or three hours.

We think it important to here note the district court made no finding that the public would be unduly inconvenienced by the closing of the agency station, nor did it decide there was either public convenience or necessity for the continuation of the agent at Savonburg. Hence, the commission's finding of an absence of public need for an agency station must be deemed to be supported by evidence, and reasonable.

Did the commission improperly consider evidence making its order of June 11, 1958, unreasonable? H. Meyer, assistant comptroller for the railroad, testified that there had been a steady decline in the railroad's net income for the past five years; that during the year 1953 the net income was $6,342,927; for 1954, $4,019,829; for 1955, $3,110,777; for 1956, $1,940,206, and in 1957 there was a deficit of $855,539. Concerning the precise point in issue, the witness further testified he prepared Exhibit No. 1 covering the period from January 1, 1953, to March 31, 1958, which disclosed revenues received and the cost of handling freight originating at or destined to Savonburg, as well as direct expenses incurred in keeping the station open. That exhibit disclosed there was charged against the Savonburg station's total revenue of $4,150.36 for 1957 the sum of $3,232.30 as its pro rata of the railroad's systemwide freight expenses under its accounting practices; that by adding such amount to the direct station expenses of $5,953.42 for the year 1957, there was total station expenses of $9,185.72, or a net loss of $5,035.36. The exhibit further showed total revenue of $569.47 for the first three months of 1958 and total expenses, direct and indirect, of $1,876.41, resulting in a net loss of $1,306.94. Thus, in maintaining the station for a fifteen-month period, from January 1, 1957, to March 31, 1958, there was a net loss of $6,342.30. Using that same method of accounting for the years 1953 through 1956, the Savonburg station showed a substantial operating loss for each and every year.

It is the sum of $3,232.30 of pro rata expenses for 1957 and varying amounts of pro rated expenses for the years 1953, 1954, 1955 and 1956, which the district court held the commission erroneously considered in determining the Savonburg station had been unprofitably operated. In this connection, it may be stated that, with the exception of 1957 and the first three months of 1958, if the systemwide ratio expenses allocated to stations were eliminated, the actual revenue in dollars and cents at Savonburg would be more than the direct expenses of operating the station.

We see nothing basically wrong with the commission's order. No expert testimony was offered by the commission or by the three parties from Savonburg who appeared in opposition to the railroad's application, nor is there any evidence in the record to show that the pro rata formula employed was incorrect or that there was any better method of accounting. While the precise question has not been decided by this court, we think that in determining whether a station has been operating unprofitably, the commission is not limited in its inquiry to the salary of the agent and other direct expenses of maintaining the station, but may give consideration to the station's pro rata share of the railroad's systemwide expenses based upon a recognized operating ratio to ascertain the over-all cost of moving traffic. If the district court's theory in the instant case is correct, the operating expenses of the railroad must be disregarded entirely since no part of them can be charged against any particular station.

In the recent case of *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.*, 182 Kan. 603, 322 P. 2d 715, we sustained an order of the district court holding as unreasonable an order of the commission which denied the application of a carrier seeking to abandon its passenger train service on a branch line of less than 50 miles. In the opinion it was said:

"A sound test to follow in cases such as this is whether the expenses which will be eliminated by discontinuance of passenger service have exceeded to such an extent revenue, which will be similarly eliminated, that the resulting net saving to the railroad will further the public good in greater measure than the loss of passenger service will impair it." (l. c. 614.)

Manifestly, the same considerations are not entirely applicable to the instant case, since a change in status of a station from agency to non-agency involves curtailment of service to a lesser degree and in a different respect than abandonment or curtailment of train service on a railroad's line or a portion of it.

Whether a railroad may properly be entitled to discontinue an agency station generally depends upon the facts of a particular case. In determining the question where an absolutely necessary service is not involved, an important test is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad of continuing such agency. In other words, whether the economic waste, if any, caused by the operation of the agency outweighs the benefits and convenience to the public (*Texas & N. O. R. Co. v. Louisiana Public Service Com'n*, 235 La. 973, 106

So. 2d 438; *Rydal-Meadowbrook Assn. v. Pa. P. U. C.*, 173 Pa. Super. 380, 98 A. 2d 481; *Missouri Pacific R. Co. v. Louisiana Public Serv. Com'n,* (La.), 115 So. 2d 337; *Ill. Central R. R. Co. v. Commerce Com.,* 410 Ill. 77, 101 N. E. 2d 588; *Mississippi Public Service Commission v. Illinois Central R. Co.* (Miss.) 108 So. 2d 573; *Los Angeles & S. L. R. Co. v. Pub. Util. Comm. et al,* 81 Utah 286, 17 P. 2d 287; *Lowden v. State,* 189 Okla. 495, 118 P. 2d 242; *Atlantic Coast Line R. Co. v. Com.,* 191 Va. 241, 61 S. E. 2d 5; *Missouri-Kansas-Texas Railroad Co. v. Fowler* (Texas Civ. App.), 290 S. W. 2d 922).

Generally speaking, the authorities are nearly, if not entirely, unanimous in their holding that in determining whether a particular station agency is operated at a profit or loss, it is proper for an administrative agency to consider the ratio of cost of maintaining the agency, including both out-of-pocket and systemwide expenses applicable to railroad operations, to revenue received from the station (*Texas & N. O. R. Co. v. Louisiana Public Service Com'n,* supra; *Rydal-Meadowbrook Assn. v. Pa. P. U. C.,* supra; *Missouri Pacific R. Co. v. Louisiana Public Serv. Com'n,* supra; *Ill. Central R. R. Co. v. Commerce Com.,* supra; *Mississippi Public Service Commission v. Illinois Central R. Co.,* supra; *Los Angeles & S. L. R. Co. v. Pub. Util. Comm. et al,* supra; *Lowden v. State,* supra; *Atlantic Coast Line R. Co. v. Com.,* supra; *Missouri-Kansas-Texas Railroad Co. v. Fowler,* supra). As we understand this record, the railroad's Exhibit No. 1, containing its operating ratio, was prepared in accordance with that rule. In 74 C. J. S., Railroads, § 402c (2), pp. 962, 963, the rule is stated as follows:

". . . The circumstances to be taken into consideration are the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad company, due regard for the welfare of the public, and the probabilities of future development. . . .

"Broadly speaking, the railroad is under no duty to provide an agent at a station where the volume of business is not sufficient reasonably to demand the services of such an employee . . . and in connection with an application for discontinuance it is unreasonable to require the maintenance of an agency station where the cost of the service is out of proportion to the revenue derived from the portion of the public benefited thereby, particularly where a substitute service may be provided affording the same essential, although less convenient, service. . . ."

From what has been said and held, we are of the opinion the commission did not err in considering the evidence in question.

It is undisputed that in 1957, the maintenance of a station agent at Savonburg cost the railroad $152 in agent's wages and benefits for each $100 of freight revenue produced, while, on the other hand, the systemwide station expense was only $6.54 for each $100 of freight revenue received. Good business management dictates that economies should be effected wherever practicable, especially where there will be no substantial curtailment of service (*I. C. R. R. Co. v. Commerce Com.*, 397 Ill. 387, 74 NE 2d 526).

Under the record in this case, freight traffic originating at Savonburg can be adequately taken care of at Erie with only the inconvenience of a long distance telephone call, paid for by the railroad. The financial loss incurred in the operation of the station outweighs what small benefits and conveniences it may offer the public and no substantial curtailment of service will be incurred by its being closed as an agency station.

We now turn to the second reason given by the district court for finding the commission's order unreasonable. In its memorandum opinion the district court stated that since there was no evidence before the commission at the time of the hearing of the extent to which the closing of the Elsmore and Stark stations would affect Savonburg, and since the railroad objected to having the matter certified back to the commission to hear evidence upon that question, it had no alternative but to find the order unreasonable.

The district court erred in its conclusion. The application of the railroad in this proceeding related solely to the discontinuance of the agency station at Savonburg. The public convenience and necessity for agencies at Elsmore and Stark were decided in other proceedings before the commission. No appeal was taken from the commission's order closing those agency stations. Consequently, matters affecting the public convenience and necessity at those stations are not in issue in this proceeding. Had those applications been consolidated with the present application, evidence of the effect of the closing of the Elsmore and Stark stations would have been material as to the public convenience and necessity of continuing the agency station at Savonburg. But, there were separate applications to the commission for those stations and separate hearings were held, hence, they constitute separate cases. Under the circumstances, evidence with respect to those stations was

immaterial to the present application, and it would have been erroneous for the commission to consider it.

After a thorough examination of the record we are convinced the commission did not err in receiving and weighing evidence of the railroad's operating ratio in determining that the Savonburg station was being operated unprofitably. Further, that the small additional convenience to the public of the service of an agency station at Savonburg was not justified by the unprofitable operation of that station as an agency station. The cost of that operation was clearly out of proportion to the benefits to and the convenience of the public as a whole.

For reasons heretofore stated, the district court erred in finding that the commission's order of June 11, 1958, was unreasonable and in setting it aside and directing the commission to deny the railroad's application.

The judgment is reversed.