LA. & ARK. RY. Co. *v*. ARK. COMMERCE COMMISSION.

5-2694                                          360 S. W. 2d 763

Opinion delivered October 8, 1962.

*Hardin, Barton & Hardin,* for appellant.

No brief filed for appellee.

GEORGE ROSE SMITH, J. The appellant applied to the Arkansas Commerce Commission for permission to eliminate its station agent and to inactivate its depot at Taylor, Arkansas, asserting that this facility is being maintained at a loss. The commission denied the application, finding that the closing of the station would result in undue inconvenience to the public in western Columbia county and would be contrary to the public interest. The circuit court affirmed the decision. The main question is whether the commission's conclusion is against the weight of the evidence.

Taylor, a city of about 700 people, is on the appellant's line between Springhill, Louisiana, about seven miles to the south, and Stamps, Arkansas, about nineteen miles to the north. The train service at Taylor has consisted of one freight each way daily and one passenger train each way daily. In 1957 the station agent and depot were maintained at an expense of $4,770.09, while the revenue assignable to the station was only $1,847.72. In 1958 the expense was $5,483.50 and the revenue $3,433.36. These are the only two years for which the appellant introduced evidence pertaining to its operations at Taylor.

Some 3,000 people within a six-mile radius of the community are served by the business houses at Taylor. These establishments include several grocery stores, a hardware and furniture store, a cleaning and pressing shop, cafes, barber and beauty shops, insurance agencies, a drugstore, a recreation hall, and municipal buildings. The merchants are dependent upon the appellant for common carrier service, for the town is not served by any truck line.

If the present application should be granted the city would still be served by rail, but the depot would not be an active facility. Incoming carload shipments could be unloaded by the consignees, as has been the practice in the past. Less than carload lots would have to be picked up by the consignees at Springhill. For outgoing freight the shipper would have to arrange, by a collect telephone call to Springhill, for cars to be spotted at Taylor and for the necessary shipping documents to be dropped off by the conductor upon one of the daily trains. The shipper would not only have to load the car, as in the past, but also have to seal it. There would be no station agent to sell passenger tickets, issue bills of lading, supply information, and perform many other duties. It is quite evident that the proposed do-it-yourself freight service would be decidedly inconvenient to the railroad company's patrons at Taylor.

In a case of this kind, where substantial losses are resulting from the operation, the question is whether that economic waste outweighs any public benefit or conven-

ience. *Chicago & N.W. Ry. Co.* v. *Mich. P.S.C.*, 329 Mich. 520, 45 N.W. 2d 520. As the court pointed out in that case the factors to be considered include the character and population of the territory being served, the public patronage or lack of it, the facilities remaining, and the operations of the carrier as a whole.

"Another statement of the principle is that although the operation of the entire system yields a net profit, the loss resulting from the maintenance of a certain service on a particular branch must be of sufficient importance to outweigh the inconvenience which the public will suffer as a result thereof." *Alabama P.S.C.* v. *Atlantic Coast Line R. Co.*, Ala., 45 So. 2d 449.

In the case at bar we cannot say that the findings of the commission, a specialized and informed tribunal are against the weight of the evidence. It cannot be doubted that the public would be greatly inconvenienced by the withdrawal of depot service at Taylor. In addition to mere inconvenience there is proof that the cessation of the existing service will adversely affect the economic growth of the community. Taylor has been a growing city; its future is bright. If, however, it no longer has access to good railway service its ability to attract new industry and to continue its progress will, according to the testimony, be substantially impaired.

The applicant's proof is not as comprehensive as it might be. There is no evidence about the financial situation of the company as a whole; so we cannot say whether it is seriously affected by the comparatively small annual loss at Taylor. Moreover, the proof relates to two years only. The net loss in 1958 was much smaller than that in 1957; the prospects for future improvement may be excellent. On the whole case we do not feel justified in declaring that the commission was required by the preponderance of the evidence to grant the application for a reduction in service.

Inasmuch as the proof establishes the reasonableness of the commission's order, there is no merit in the appel-

lant's contention that its property is being arbitrarily taken without due process of law, in violation of the Fourteenth Amendment.

Affirmed.