**UNION PACIFIC RAILROAD COMPANY,**
a Utah corporation, Appellant
(Petitioner below),

v.

The **PUBLIC SERVICE COMMISSION OF WYOMING** et al., Appellees
(Respondents below).

No. 4253.

Supreme Court of Wyoming.

Jan. 18, 1974.

Loomis, Lazear, Wilson & Pickett and Frederick G. Loomis, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., and Richard J. Moen, Sp. Asst. Atty. Gen., Cheyenne, for appellees.

Before PARKER, C. J., McEWAN, GUTHRIE, and McCLINTOCK, JJ., and PEARSON, District Judge (R.).

Mr. Chief Justice PARKER delivered the opinion of the court.

■ Union Pacific Railroad Company has appealed from a judgment of the district court affirming an order of the Public Service Commission which in part rejected the appellant's petition seeking to close its agency station at Hawk Springs, Wyoming, the railroad being required to maintain agency service and an agency station during the months of July, August, and September, each and every year. Appellant contends that the order entered by the Public Service Commission is not in conformity with law, that the findings of fact contained in the order were not supported by substantial evidence, and that the order is arbitrary and capricious or is characterized by an abuse of discretion. The railroad does not criticize the commission's finding that out-of-pocket expenses for maintaining a full-time agent at Hawk Springs were almost equal to the station's revenues but points out that the income from the town's freight shipments did not meet a pro rata share of the entire sys-

tem's expenses. In that connection, it is argued, inter alia, that the basic concept, or factor, to be kept in mind in determining whether an agency station should be closed or kept open is the public convenience and necessity, that the courts have held the public convenience and necessity to be considered in granting or denying an application to close an agency station mean the convenience and necessity of the public and not of an individual or individuals, and that in the absence of public convenience and necessity the maintenance of a railroad agency station primarily involves a question of business policy with which regulatory bodies should not interfere.

Here, as in the companion case (Union Pacific Railroad Company v. Public Service Commission of Wyoming, No. 4255, Wyo., 518 P.2d 23), appellant's argument that the agency station does not serve the public convenience and necessity but rather serves only the individual convenience of the grain elevator, which the evidence shows to be handling the products of various residents of the area, is unpersuasive. Relevant is the court's observation in State of Nebraska ex rel. Nebraska State Railway Commission v. United States, D.Neb., 255 F.Supp. 718, 722, "The effect upon the total community may be seen through the effect * * * upon the individual shippers who serve the community."

Here the commission in its order stated:

"The railroad offered testimony to show that the work done by the agent at Hawk Springs could easily be handled by the agent at Yoder, approximately eleven miles away. They show that there is an all weather road connecting the two points and that telephone service is available. This testimony was countered by testimony to the effect that the telephone does not always work, that there would be no one to contact when the agent at Yoder is out of his office, and that loading, billing, car repair, door closing and car ordering go on simultaneously at both Yoder and Hawk Springs during the harvest season.

"The railroad shows out of pocket expenses for maintaining an agent in Hawk Springs are almost equal to revenues derived by the station. * * * The Commission does not insist that the railroad be unduly burdened with people and facilities which make little or no money. This situation is carefully weighed against the inconvenience to the public.

*   *   *   *   *   *

"The railroad has testified that if more men are needed to service the area in peak periods they will be put on. The Commission does not see this as a solution to the problem presented in this case. The Commission can foresee that the determination of when more men are needed can become an argumentative point. It therefore believes that full agency service should be available during the wheat harvesting season between July 1 and October 1. Large shipments made at other times of the year can be planned for and provided for in advance."

From our review of the record we disagree with appellant's assertion that the requirement for the presence of an agent at Hawk Springs during the months of July, August, and September is not supported by substantial evidence. The testimony shows the commencing of the harvest is dependent on the weather—it may start in July but again it may not until August, lasting up to thirty days thereafter. Furthermore, although the Yoder Grain and Lumber Company, with elevators at Veteran, Yoder, and Hawk Springs—the latter with a capacity of 120,000 bushels—could store the farmers' wheat, if dry, grain which has a high moisture cannot be so stored and must immediately go onto railroad cars to be shipped out.

Considering the burden of the carrier to prove the lack of the public's necessity and convenience in order to justify the closing of the station, we conclude that the

district court was correct in affirming the commission's order.

Affirmed.

GUTHRIE, J., with whom McEWAN, J., joins (concurring).

I concur in the result herein with some reluctance. This is based upon that portion of the opinion which sets out that the carrier has failed to support its burden of proof of the lack of public necessity and convenience. Further, because some relief was granted herein and that it is impossible for this writer or any person to determine the effect of such modification and the agency may become profitable and properly serve the public convenience and necessity by operations during this limited period.

The writer does, however, find from an examination of the Discussion, Findings and Order of the Commission a statement which causes him concern and which should not be allowed to pass unnoticed. A statement referring to profit and loss appearing in the discussion in a companion case herein involving Burns (No. 4255) was considered necessary of notice. In the present case the statement is as as follows:

> "The railroad shows out of pocket expenses for maintaining an agent in Hawk Springs are almost equal to revenues derived by the station. These facts were not substantially controverted and for the purpose of this case are accepted by this Commission. The Commission does not insist that the railroad be unduly burdened with people and facilities which make little or no money. This situation is carefully weighed against the inconvenience to the public."

This statement causes the writer concern and may indicate that the commission applies the wrong standard for determination of the "profitability" of an agency. If the commission had made this the basis of its disposal the writer would be forced to dissent. However, because the order read as a whole does indicate that the real basis of

this decision is the public convenience and necessity a dissent is not indicated.

The writer feels this concurrence may be helpful and that attention should be directed to this statement because I believe from a national viewpoint it may be said without contradiction that the regulation of our public carriers is not one of unqualified success nor has it benefited either the carriers or the public which they are presumed to serve.

The brief of appellee concedes that if a prorated share of the railroad's system-wide expenses were added to the out-of-pocket expenses this agency would operate at a loss.

The writer commends the commission's attention to the case of Missouri-Kansas-Texas Railroad Company v. City of Savonburg, 186 Kan. 120, 348 P.2d 1015, 1021, where the following appears:

> "Generally speaking, the authorities are nearly, if not entirely, unanimous in their holding that in determining whether a particular station agency is operated at a profit or loss, it is proper for an administrative agency to consider the ratio of cost of maintaining the agency, including both out-of-pocket and system-wide expenses applicable to railroad operations, to revenue received from the station [citing many cases.] * * *"

In the same vein the Court of Appeals of Kentucky has said in the case of Commonwealth ex rel. Kentucky Railroad Commission v. Illinois Central Railroad Company, Ky., 358 S.W.2d 533, 535:

> "* * * The Commission failed to take into account the proportionate share of general operating expenses, rent and taxes of the Railroad's freight system as it properly should have done and considered only the direct station expense. * * *"

It is the view of this writer that to fail to do so is to confuse "gross" with "net" profit insofar as the operation of the agency is concerned and that this standard

should be applied in cases which may arise hereafter.

McCLINTOCK, J., in which PEARSON, District Judge (R.), joins, dissenting.

I dissent in this case and suggest that the proceedings should be returned to the commission with instructions to make proper and separate findings of fact and conclusions of law. Most of the observations made by me in cause No. 4255, involving service at the town of Burns, are equally pertinent to this case and I shall not here repeat them. I would only add that perusal of the order in this case convinces me that this commission, as well as other administrative agencies, is too prone to consider a recital of the evidence adduced by both parties as the equivalent of findings. I think this is a bad habit; it is the purpose of the fact finding agency to find that certain facts exist, and not that there is evidence to one effect or the other.

The result of the commission's decision may be to present a practical test of the real need for agency service—as contrasted to operation of a blind siding at this and other stations which the railroad seeks to close. I note that while the commission finds that the station should be open during the months of July, August, and September (described as the wheat harvesting season), during four years as to which we have figures the actual carloads of wheat shipped in the months of October through December were considerably higher. Thus the comparison is 30 to 17, 19 to 2, 28 to 8, and 8 to 5, respectively, in each of the years 1968 through 1971. If this has any bearing on the need for cars and personal attention of an agent at Hawk Springs, it would seem that the commission's order may hinder, rather than help, the situation. In any event, it should furnish concrete evidence as to how well the railroad can furnish the essential service of receiving cars at Hawk Springs when an agent is not personally present at that station. This could have a most important bearing on any future attempts to restrict agency service.