**UNION PACIFIC RAILROAD COMPANY, a Utah corporation, Appellant (Petitioner below),**

v.

**The PUBLIC SERVICE COMMISSION OF WYOMING et al., Appellees (Respondents below).**

**No. 4255.**

Supreme Court of Wyoming.

Jan. 18, 1974.

**24**

Loomis, Lazear, Wilson & Pickett and Frederick G. Loomis, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., and Richard J. Moen, Sp. Asst. Atty. Gen., Cheyenne, for appellee, Public Service Commission.

Ellen Crowley, Cheyenne, for appellees: Town of Burns, Farmers State Bank of Burns, Wyoming, and Farmers Cooperative Supply Association.

Before PARKER, C. J., McEWAN, GUTHRIE, and McCLINTOCK, JJ., and PEARSON, District Judge (R.).

Mr. Chief Justice PARKER delivered the opinion of the court.

Union Pacific Railroad Company has appealed from a judgment of the district court affirming an order of the Public Service Commission, which rejected the appellant's petition seeking to close its agency station in Burns.[1] Appellant contends that the order of the commission was contrary to law, constituted an abuse of discretion, and was arbitrary and capricious.

From the briefs and oral argument, it appears that there is substantial agreement between the railroad, the town of Burns, and the commission, that a primary criterion to be applied in determining whether or not an agency station should be closed is that of public convenience and necessity. However, the appellant insists that there are numerous factors to be considered; and it centers upon the commission's allegedly improper finding of no showing having been made that the station is or will in the future lose money.

To place the present matter in perspective, it is desirable that certain relevant portions of the commission's findings be stated:

"2. The U.P. has not shown that the agency station at Burns is now, or will in the future lose money.

"3. Future development of the area would be hindered by the lack of agency service in Burns.

"4. The public convenience and necessity require that the agent and agency station remain at Burns."

The appellant strenuously argues that the profitability of the station is not a governing or major factor to be considered but is only one of some seven mentioned as important: (1) the volume and nature of the business transacted at the station; (2) the

1. Cases 4253 and 4254 relating to similar petitions seeking the closing of the agency stations at Medicine Bow and Hawk Springs were consolidated with 4255 for argument, and opinions disposing of these appeals are issued concurrently.

cost of furnishing such service; (3) the ratio of the cost of maintaining the station agency (including both out-of-pocket and overall expense) to revenues received from the station; (4) the nature of the transportation service remaining or to be substituted; (5) the proximity and accessibility, including public telephone service, to other stations; (6) the inconvenience to the entire shipping and traveling public and not merely to an individual or a few shippers resulting from removal of the agent; and (7) the probabilities of future development.

While it is true that the profitability aspect, covered indirectly in the first three mentioned factors, is not controlling but merely one element to be viewed along with various others, we think that, reasonably interpreted, the commission's findings so indicate; and it would seem that the commission considered profitability as only one of three factors on which the order was based.

■ Doubtless there is validity in each of the seven factors indicated by appellant to be of importance in determining whether or not a railroad agency should be maintained or discontinued. However, the matter varies as to existing situations. Our research leads us to believe that for practical purposes the correct rule is that if the public good, its convenience and necessity, outweighs the expense of the railroad in continuing such agency the commission is justified in denying the request for closing. Erie-Lackawanna Railroad Company v. Pennsylvania Public Utility Commission, 202 Pa.Super. 511, 515, 198 A.2d 383, 385; Louisiana and Arkansas Railway Company v. Arkansas Commerce Commission, 235 Ark. 506, 360 S.W.2d 763, 764; 74 C.J.S. Railroads § 402(2).

■ Some evidence was presented to the commission purporting to show that there would be future development in the Burns area and that lack of an agency would impede this. That feature although conceivably pivotal in some situations would be superfluous to any decision where the public's present necessity and convenience is clear. Accordingly, the paramount question before us is whether or not the public convenience and necessity require that the agency station remain at Burns; and it is basic that the burden of proving lack is upon the carrier seeking discontinuance of the agency. Application of Chicago & North Western Railway Company, 79 Wyo. 343, 334 P.2d 519, 521.

■ On what we hold to be the primary question, the appellant seeks to substantiate its position by contending that the agency station at Burns does not serve the public convenience and necessity but rather serves only the individual convenience of two grain elevators—shippers and receivers of carload freight—citing authorities for the principle that public convenience and necessity cannot rest upon the service to individual shippers. Such argument is unpersuasive in the instant situation since the evidence inidcates that one of the shippers, the cooperative, is not from a practical approach an individual but representative of many different families in the area dependent for livelihood on the shipping and that the company merely effectuates an arrangement for shipping products either produced or used by citizens of the community. See State of Nebraska ex rel. Nebraska State Railway Commission v. United States, D.Neb., 255 F.Supp. 718, 722. For that reason the cases cited by appellant referring to dissimilar conditions are not pertinent and need not be analyzed.

■ Addressing ourselves to the principal issue, i.e., the evidence or lack of it showing that the continued existence of the agency station at Burns is required by the convenience and necessity of the citizens, we find that the area surrounding the town is the largest grain-producing area in Laramie County and appellant ships by rail from the Burns station nearly 100 percent of the wheat grown there. The freight revenue and number of carloads of freight handled at the station since 1968 (with the exception of 1971[2]) has risen steadily.

2. A strike by train crews in 1971 greatly impeded shipping, and it is conceded to have been abnormally low that year.

The wheat acreage in the vicinity has increased during the past several years, and the service presently given at Burns and its four blind sidings could not reasonably be expected to run efficiently under the substitute service, which the railroad proposes out of Pine Bluffs. In that connection, it is noted that witnesses for the appellant have suggested that the proposed service by way of Pine Bluffs could be initiated by telephone. However, there is considerable evidence tending to show that service by telephone is much less efficient, especially when all of the towns proposed to be served by Pine Bluffs would be requiring help at approximately the same time. Such probable inefficiency would be magnified whenever the agent's duties would take him away from the Pine Bluffs station since there is no other personnel to answer the phone. Further, some complaint is registered by appellees that the proposed reduction of agency stations is not accompanied by a clear and definitive plan for substitute service; one of its principal witnesses testified train orders now handled at Burns "would either be handled at Pine Bluffs or that would be up to the discretion of the dispatcher." Such testimony might well have been interpreted by the commission to indicate that the public convenience and necessity of the Burns area would be adversely affected by the requested closing.

A review of all the facts and circumstances presented in the record indicates that the appellant failed to carry its burden of showing that the public convenience and necessity do not require the agency to remain. Further, our review discloses that notwithstanding the failure of the commission's order to fully comply with the standards outlined in Pan American Petroleum Corporation v. Wyoming

Oil and Gas Conservation Commission, Wyo., 446 P.2d 550, 555,[3] the commission acted within its powers, the action was in conformity with law, was not procured by fraud, and the findings of fact were supported by substantial evidence. We, therefore, hold that the judgment of the trial court affirming the order was proper.

Affirmed.

McCLINTOCK, J., in which PEARSON, District Judge (R.), joins, dissenting.

I believe the commission has wholly failed to comply with the explicit direction of § 10 of the Wyoming Administrative Procedure Act[1] requiring separate findings of fact and conclusions of law, and would therefore remand the proceedings with instructions to make such findings and conclusions. This procedure was followed in Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission (Wyo.1968), 446 P.2d 550, 555, and I think that Mr. Justice Gray there said about everything that needs to be said. After pointing out that the requirement is to make findings of basic and not ultimate facts, so as to provide the reviewing court with a rational basis for determination whether the decision is supported by substantial evidence, he observes that ultimate facts can be reached only by a process of legal reasoning based on the legal significance of the primary evidentiary facts and concludes that an orderly review "requires that the primary basic facts must be settled before it can be determined that ultimate facts found by the agency conform to law."

I concede with the majority of the Court that the issue to be decided is whether the public good, its convenience and necessity, outweighs the expense of the railroad in continuing such agency, so as to require

3. Had the instant case involved issues which were more complicated, the failure to comply with our prescribed standards as to findings might have necessitated a remand. See Rydal-Meadowbrook Civic Ass'n v. Pennsylvania Public Utility Commission, 173 Pa.Super. 380, 98 A.2d 481, 485.

1. Section 9–276.28, W.S.1957. It provides in pertinent part that " * * * The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. * * * "

the continuance thereof. The commission makes two findings of ultimate fact:[2] That Union Pacific has not shown that the Burns agency is now losing or will in the future lose money; and that the future development of the Burns area will be hindered by the elimination of the agent and agency station at Burns. This Court considers the second finding unnecessary since under the view it takes of the case there is an immediate public need for continuance of the agency station.

However, while the majority state that the action of the commission was in conformity to law "and the findings of fact were supported by substantial evidence", in order to sustain the commission's decision they actually make an independent finding that the commission has not made, namely, that the service given at the station at Burns and its four blind sidings could not reasonably be expected to run efficiently under the substitute service which the railroad proposes out of Pine Bluffs. Evidence substantiating this is said to be the fact that the Pine Bluffs agent will have more business than now, he will be out of his office more, telephone contact with him will be more difficult, and the railroad has failed to present a clear and comprehensive plan for substitute service. It is said that such testimony "might well have been interpreted by the commission as likely to have inimical effects on the public convenience and necessity of the Burns area."

I am concerned that despite the express mandate of the statute the commission has failed to find the basic or underlying facts necessary to support its decision and a majority of this Court independently review and pass upon the sufficiency of the evidence to reach a determination that the commission's action is justified, not by what it found as fact, but by what it might have found. To me, this amounts to a substitution of the court as trier of the facts, so long as it only affirms and does not set aside the agency decision. I do not think that it is the intent of the Administrative Procedure Act that the courts should speculate as to what the commission might have properly found; it is the duty of that commission to set forth specifically what it does find. Therefore, I cannot agree with the conclusion of the majority that notwithstanding the commission's departure from the standards outlined in *Pan American* its action was in conformity with law. I think that clearly it was not.

While I think the requirement that an administrative agency make clear-cut findings of basic fact should never be ignored, I should also add that I am disturbed by what appears to me to be an attitude of the commission that as long as a station is making some money it must be continued. This is indicated by the statement in the "Discussion" portion of the order where it is said that "the Commission adheres to the policy that agencies should be closed only when they are losing money or are no longer needed or used." The commission as well as this Court should give thoughtful consideration to the authorities cited by Union Pacific, that in the absence of public convenience and necessity the maintenance of an agency station involves a question of business policy with which regulatory bodies should not interfere,[3] and that it is the function of such regulatory bodies to eliminate unnecessary expenses, not to perpetrate them.[4] On the basis that ex-

---

2. The order contains two other "findings": that the commission has jurisdiction of the parties and of the proceeding (which is not contested); and that the public convenience and necessity require that the agent and agency station remain at Burns. I consider both of these to be conclusions of law; the latter is actually the decision upon the whole proceeding.

3. Missouri Pacific R.R. v. State Corporation Commission (1964), 192 Kan. 575, 389 P.2d 813, 816; Application of Chicago, B. & Q. R.R. (1952), 155 Neb. 387, 52 N.W.2d 238, 239; Application of Chicago, B. & Q. R.R. (1965), 179 Neb. 489, 138 N.W.2d 711, 715.

4. Missouri Pacific R.R. v. State Corporation Commission, *supra*, n. 3; Application of Chicago, B. & Q. R.R., *supra*, n. 3; Pennsylvania R.R. v. Pennsylvania Public Utility Commission (1962), 197 Pa.Super. 382, 178 A.2d 856, 858.

penses needlessly incurred represent economic waste, I think the commission should have carefully considered just what real inconveniences to the public would have resulted from the elimination of the agent at Burns.

The railroad may have been remiss in not presenting a better picture of its substitute plan [5] for operations through Pine Bluffs, and the commission would certainly have been justified in exacting more specific commitments as to just how the public would be served, but I think that the commission's approach to the case has been colored by the above mentioned policy not to close a station unless it is losing money. Such an impression on my part might have been avoided had the commission, as the trier of the fact, made specific and basic findings of fact and on the basis of those facts reached certain definite conclusions of law so that a logical and reasoned decision could be reached.

5. I cannot help but feel that the commission has unfortunately failed to consider the situation at Egbert, formerly an agency station, but now a blind siding. Concerning this siding, counsel for Union Pacific describes the present operation which appears to handle a substantial amount of traffic. Use of the telephone to Burns is important, and if that agency station is closed then the telephone calls will be made to Pine Bluffs. Counsel considers it significant that the shipper at Egbert, formerly Point of Rocks Elevator Company and now Pillsbury Corporation, did not protest the change.