89 So.2d 64

## ALABAMA PUBLIC SERVICE COMMISSION

### v.

## WESTERN RAILWAY OF ALABAMA.

3 Div. 758.

Supreme Court of Alabama.

July 26, 1956.

Wm. M. Russell, Tuskegee, and Hill, Hill, Stovall & Carter, Montgomery, for appellant.

Steiner, Crum & Baker, Montgomery, for appellee.

SIMPSON, Justice.

The appellee, Western Railway of Alabama, filed a petition with the appellant, Alabama Public Service Commission, for authority to discontinue Milstead, Alabama, as an agency station and to make it a prepay station for carload and less-than-carload freight. After the hearing of the petition, the Public Service Commission found from the evidence that the present and future public convenience and necessity required the continuance of Milstead as an open agency station and denied the petition.

The Western Railway of Alabama appealed from the order of the Commission to the circuit court of Montgomery County, sitting in equity. The circuit court considered the appeal on the record of the proceedings had before the Public Service Commission as the statute requires, and on such consideration reversed the order of

the Commission and remanded the cause to the Commission with directions to enter an order granting the petition. From this decree the Commission appealed.

By statute the Commission's order shall be taken as prima facie just and reasonable. The circuit court shall set aside the order if the court finds that: "the commission erred to the prejudice of appellant's substantial rights in its application of the law; or, the order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence." § 82, Tit. 48, Code of 1940.

The circuit court found that the Commission's order was based upon findings of fact contrary to the substantial weight of the evidence and that the Commission erred to the prejudice of the Western's substantial rights in the application of the law. The question before this Court is whether the findings of the circuit court were correct.

We agree with the circuit court. The preponderance of the evidence, as we view it, showed that an agent at Milstead is not required by public convenience and necessity.

Milstead, Alabama, is a small community situated in Macon County on the Western Railway approximately 27 miles east of Montgomery. The change requested by the Western was an economy measure. They petitioned for authority to remove the agent at Milstead and to place this station under the jurisdiction of the agency station at Chehaw which is 11 rail miles or 16 highway miles from Milstead.

So far as we know this is the first time this Court has been called upon to decide the question of the removal of a station agent not in connection with the closing of a station or the reduction of train service.

Other courts hold that where a railroad seeks to discontinue an agency, the following factors, among others, are to be considered: (1) The volume and nature of the business transacted at the station; (2) the ratio of cost of maintaining the station agency to the revenue received from the station; (3) the nature of the transportation service remaining or to be substituted; (4) proximity and accessibility, including public telephone service, to other stations; and (5) the inconvenience to the entire shipping and traveling public and not merely to an individual or a few shippers resulting from the removal of the agent. Rydal-Meadowbrook Civic Ass'n v. Pennsylvania Public Utility Comm., 173 Pa. Super. 380, 98 A.2d 481; Union Pac. R. Co. v. Nebraska State Ry. Comm., 149 Neb. 575, 31 N.W.2d 552; Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545; Atchison, T. & S. F. Ry. Co. v. Illinois Commerce Comm., 397 Ill. 406, 74 N.E.2d 885; Atlantic Coast Line R. Co. v. Commonwealth ex rel. State Corp. Comm., 191 Va. 241, 61 S.E.2d 5.

These criteria will be considered by us along with the facts of this particular case. The volume of business at Milstead is small. During the entire year 1953, 87 carloads of pulpwood were shipped from Milstead, and two carloads of fertilizer were received. During the first nine months of 1954, this business decreased. Only 30 carloads of pulpwood were shipped, one car of scrap iron was shipped, and 3 carloads of fertilizer were received—a total of 34 carloads in and out of Milstead during this period.

There is no necessity for an agent to handle this business. The evidence showed that Cooks, Alabama, a non-agency station on the Western, handles from 30 to 35 cars a day with no difficulty. The principal commodity handled at Milstead is pulpwood. The traffic manager of the consignee of that pulpwood testified that over ninety percent of the stations from which they received pulpwood are non-agency stations, and that service from non-agency stations was satisfactory.

There was some evidence that in the future gravel would be shipped daily

from Milstead and that the weighing of the cars at Milstead would be convenient to the shippers. These additional shipments could be handled at a non-agency station with no difficulty. The convenience here is to individuals and not to the public. The convenience and necessity required are those of the public and not of an individual or individuals. Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545; State ex rel. Utilities Commission v. Atlantic Coast Line R. Co., 233 N.C. 365, 64 S.E.2d 272.

There was a total of 319 passenger tickets sold at Milstead during 1953, and 148 sold during the nine months of 1954—less than one ticket a day. These tickets may just as easily be purchased from the conductor of the train at the same price.

The testimony showed that the Milstead agency is being operated at an economic loss to the Western. It appeared that the total gross revenues for 1953 from carload, less-than-carload business, and passenger fares accruing to Western at Milstead, Alabama, amounted to $2,982.25. The total expenses for the same period were $8,119.04; of that figure, actual agency expenses at Milstead including payroll expenses were $6,348.88. The expense of transporting Milstead business was $1,770.16. Thus, under the Commission's method of computation, Milstead was operated at a loss of $5,136.79 during the calendar year 1953. During the first nine months of 1954, the total revenues of all kinds at Milstead were $1,400.44. The total expenses were $5,907.87. Of those expenses, $4,959.18 were actual agency expenses, and $948.69 represented the expense of transporting Milstead business. During this period of 1954, the operation of the Milstead agency resulted in a net loss of $4,507.43. It appears that the expense at Milstead was more than two times the total gross revenue for 1953 and that during the first nine months of 1954, the total expenses were three and one-half times the total gross revenue of the station. In a recent case the Illinois Supreme Court stated:

"We must consider the question as to whether the cost of maintaining the agency is out of proportion to the benefit to the public as a whole. The maintaining of an uneconomic service resulting in an economic waste cannot be justified or excused by the showing that the service has been in the convenience and necessity of some individual." Illinois Cent. R. Co. v. Illinois Commerce Comm., 397 Ill. 323, 74 N.E.2d 545, 547.

The transportation service remaining at Milstead will be substantially the same. Every passenger train that stops at Milstead will continue to do so with the conductor on the train selling the tickets instead of the station agent. The four freight trains that serve Milstead each day will continue to do so. The only difference in the freight service is that outbound shipments will be shipped freight collect on a conductor's bill of lading instead of a regular bill of lading, and inbound shipments will move prepaid. Carload and less-than-carload shippers may order cars and secure information from the governing agent at Chehaw which is on the same local telephone exchange as Milstead. In addition, there will be a box provided by the railroad for handling messages to the freight train conductors by the shipping public. The agent at Chehaw will notify consignees of the arrival of shipments at Milstead.

The principal shipper of pulpwood testified about various shipments from other points than Milstead. He stated that the agent at Milstead assisted in ordering cars at those other points. He also stated that he handles these matters by telephone. Since the Chehaw agency of the Western is open seven days a week, 16 hours a day, and is on the same telephone exchange as Milstead, it would seem that the shipper could as conveniently telephone the Chehaw agency.

The evidence showed that Milstead is the governing agency for Shorter, Tysonville and Baldwin Farms, non-agency

points. It further showed that only a small amount of business was done at those stations, and that the accounting work relating thereto could as easily be handled by the Chehaw agency.

Milstead is the junction point between the Birmingham and Southeastern Railroad Company and the Western Railway. The testimony showed that there are not many shipments transferred from one carrier to the other and that the Milstead agent's services will no longer be needed in this respect. A porter at the Milstead station now takes care of the transfer of mail. He will continue to do so. The two connecting carriers anticipate no difficulty in handling shipments without the service of an agent.

 After a thorough examination of all of the evidence, we are convinced that public convenience and necessity does not require a regular station agent at Milstead as was decreed by the circuit court.

Affirmed.

LIVINGSTON, C. J., and MERRILL and SPANN, JJ., concur.