No. 43,491

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, and RAILWAY EXPRESS AGENCY, INC., *Appellants*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee.*

(389 P. 2d 813)

Opinion filed March 7, 1964.

*Ralph M. Hope*, of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Richard W. Stavely, Charles S. Lindberg* and *Ronald M. Gott,* all of Wichita, were with him on the briefs for the appellants.

*Charles R. Escola*, of Topeka, argued the cause, and *Robert C. Londerholm* and *Glenn D. Young*, both of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment of the district court approving an order of the State Corporation Commission which denied the application of the Missouri Pacific Railroad Company and the Railway Express Agency, Inc., to operate the station at Stilwell, Kansas as a non-agency station.

The application to dispense with the agency at Stilwell stated in part:

"Said station and agency at Stilwell is 16.66 miles from applicants' agency at Dodson, Missouri to the east thereof and 19.61 miles from applicants' agency at Paola, Kansas to the west thereof and business now handled at Stilwell can be properly and more reasonably handled from said stations and agencies

at Dodson, Missouri and Paola, Kansas and other stations. Almost all of the business at said agency at Stilwell consists of carload shipments, the only other business being a very small number of inbound l. c. l. shipments; and all of said carload shipments, both outbound and inbound, are shipments by and to Dannen Feed Company, of Redel, Kansas, which is 4.71 miles from said station at Stilwell and only 11.95 miles from applicants' said station and agency at Dodson, Missouri, and the operators of said Dannen Feed Company have advised applicants that their shipments can be handled just as well and as conveniently to them through applicants' agency at Dodson, Missouri, and that they are agreeable to their shipments being so handled and that they will not object to or oppose applicants' application to discontinue their said agency at Stilwell.

"Public convenience and necessity do not require the continued maintenance and operation by applicants of a railroad or express station and agency or the employment of an agent or representative at Stilwell nor the rendering of express service thereat and the same should be discontinued in the interest of efficient and economical management and service."

The facts as disclosed by the evidence will be summarized.

Stilwell, Kansas is a community of 159 people and has only two principal businesses. The agency there now handles the railroad business for the stations at the towns of Redel and Bucyrus, Kansas. These are two non-agency points on the railroad, five miles north and south respectively from Stilwell. In the event the Stilwell agency is discontinued, the agency at Dodson, Missouri, which is 16.6 miles north of Stilwell, will handle the business now handled at Stilwell, including the non-agency business handled by Stilwell for Redel and Bucyrus. The shippers could also use the railroad's agency at Paola, which is 19.6 miles south of Stilwell. There is no passenger service at either of the three points. The freight service is furnished by a tri-weekly train. The business at Stilwell consists mostly of less-than-carload lots which is small in quantity. There is a small amount of carload business. The business handled by the Stilwell agency for Redel and Bucyrus consists only of carload business. There is a telephone in each of the stations at Dodson, Paola and Stilwell. Shippers and consignees of freight may call either of those agencies concerning any railroad business and the railroad will pay the toll charges.

The manner of handling shipments through the Dodson and Paola agents made or received by the residents of Stilwell, Redel and Bucyrus, if Stilwell is discontinued, will be the same as the present handling by the Stilwell agent except that telephone calls will be at the expense of the railroad. The station building at Stilwell will be left unlocked for l. c. l. shipments.

During the past six years preceding the application, the cost of operating the agency at Stilwell exceeded the revenue from incoming and outgoing business at the Stilwell station by three to four thousand dollars per year. If the revenue from the incoming and outgoing business at the towns of Redel and Bucyrus were credited to the Stilwell station, the revenue would be in excess of the expense of the station. The agent at the Stilwell station is occupied but one or two hours each day in performing his duties.

The representatives of the railroad contacted the principal shippers which might be affected by the dispensation of the agency at Stilwell and received no objection. The only protestant that appeared at the hearing was a salesman for the Brown Shoe Company. He stated that he received four or five express shipments of sample shoes from his company each year and returned them about three times a year.

The Commisssion, after considering the evidence, found:

"That public convenience and necessity requires the maintenance and operation of a station and agency at Stilwell, Johnson County Kansas."

The applicants in due course filed their petition for review in the district court. The reviewing court found the order of the commission to be lawful and reasonable and sustained it.

The applicant has appealed contending that the record contains no evidence to support a finding that public convenience and necessity require the operation of the Stilwell station as an agency station, and the Commission's order is therefore unreasonable.

After a careful examination of the record, we are forced to agree with appellant as to the absence of evidence to support a finding of public convenience and necessity.

It is not contended that public necessity requires an agent at the Stilwell station. It is conceded that stations at Redel and Bucyrus can be operated as conveniently by the agency at Dodson as at Stilwell.

We find no evidence of public inconvenience to the shippers at Stilwell by dispensing with the agency at that point. The two principal shippers expressed no inconvenience or opposition to dispensing with the agency. The only protestant that appeared at the hearing was a Brown Shoe Company salesman who received four or five shipments of sample shoes each year and returned them about three times a year.

Public convenience, as the term is used in the public utility act,

means the convenience of the public, not the convenience of an individual doing a very limited business. The operation of a service requiring a substantial expenditure cannot be justified by a showing that the service has been convenient to a single individual. This is a well established principle of law applicable to public utility regulation. (*Ill. Central R. R. v. Commerce Com.*, 399 Ill. 67, 77 N. E. 2d 180; *Arizona Corporation Com'n v. Southern Pacific Co.*, 87 Ariz. 310, 350 P. 2d 765; *Chicago, B. & Q. R. R. Co. v. Drayton*, 172 Neb. 321, 109 N. W. 2d 369; *Alabama Public Serv. Com'n v. Western Ry. of Ala.*, 264 Ala. 619, 89 So. 2d 64; *Illinois Central R. Co. v. Louisiana Public Serv. Com'n*, 240 La. 769, 125 So. 2d 159; *Utilities Com. v. R. R.*, 233 N. C. 365, 64 S. E. 2d 272; *Atchison, T. & S. F. R. Co. v. State*, 189 Okla. 485, 118 P. 2d 202, and *W. M. Ry. Co. v. Pub. Ser. Comm.*, 144 W. Va. 110, 106 S. E. 2d 923.)

In the absence of public convenience or necessity the maintenance of an agency primarily involves a question of business policy with which the commission should not interfere.

The briefs devote much space to a discussion as to whether the Stilwell station is operating at a loss or a profit. The controversy involves the questions of considering allocated expense as well as the direct expense of operation of the station, and whether the business at the Redel and Bucyrus stations should be credited to the Stilwell station. The issues in this case do not require a consideration of loss or profit. Any unnecessary expenditure results in an economic loss. It is the function of the commission to aid in the elimination of unnecessary expenditures, not to perpetrate them. In the absence of any question of convenience and necessity, the manner or method of rendering service should be left to the discretion of the management without interference by the Commission.

The Commission, in its presentation to this court, makes no attempt to justify its finding that public convenience and necessity requires the maintenance and operation of a station and agency at Stilwell.

Other than its contentions that the station at Stilwell is operating at a profit if allocated expenses are disregarded and the business at the Redel and Bucyrus stations are credited to the Stilwell station, a contention which we have passed as unnecessary to the determination of the case, the Commission contends:

"The Missouri Pacific is required to provide the necessary station facilities within the state of Kansas to meet the convenience and necessity of Kansas

shippers. The applicant cannot lawfully meet this responsibility by providing facilities at Dodson, Missouri. This responsibility cannot be fulfilled if the agency dealing with Kansas shippers is located beyond the territorial limits of the state of Kansas. The State Corporation Commission of Kansas would have no standing to appear before the Public Service Commission of Missouri to oppose the closing of the station at Dodson and the transferring of its facilities to a point further east on the Missouri Pacific Lines.

"G. S. 1949, 66-187 provides in part:

" 'It shall be the duty of every railroad company or other common carrier, doing business within the state of Kansas, to construct and maintain proper freight depots and freight terminal facilities upon its lines of railroad in the state of Kansas, *and within the limits thereof,* at such cities or places as shall be designed by the corporation commission of the state of Kansas, and within the time specified by the order of said commission.' (Emphasis supplied.)"

It should first be noted that the statutory provision relied on by the Commission which was enacted in 1905, was abrogated by the comprehensive public utility act of 1911. (G. S. 1949, 66-101, *et seq.*)

The act of 1905 contained a mandatory requirement that freight depots be maintained at such cities and places in the state as the Commission should designate. No measure of reasonableness for the designation was provided. Relief was available only in the form of mandamus or injunction. Under the public utility act of 1911 the question of what facilities will be reasonably adequate are questions of fact to be determined after an investigation.

In *State, ex rel., v. Railway Co.,* 117 Kan. 86, 230 Pac. 333, this court, in considering a statute enacted in 1905, relating to stopping passenger trains and building passenger depots in certain cities, stated at page 87 of the opinion:

"The question, therefore, is whether the statute of 1905 is inconsistent with the public utilities act of 1911.

"By the public utilities act regulation of public utilities was provided for in a comprehensive scheme, which included regulation of railroads. Before that the subject had been in a state of nebulosity, with a sort of nucleus in the form of a board of railroad commissioners. Generally, railroads were regulated by legislative fiat, enforceable by fine and by issuance of mandatory writs. Development of the modern method of regulation is sketched in the opinions in *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544, and *Telephone Association v. Telephone Co.,* 107 Kan. 169, 173, 190 Pac. 747. The conclusion reached in the latter case was that any controversy which naturally falls within the scope of the jurisdiction of the public utilities commission must be adjusted by that tribunal.

"The statute of 1905 is inconsistent with the public utilities act in several respects. The standard of regulation in the public utilities act is the lawful, practical standard of efficient and sufficient service. . . ."

A similar conclusion was reached in *Missouri-Kansas-Texas Rld. Co. v. Standard Industries, Inc.,* 192 Kan. 381, 388 P. 2d 632 recently decided.

The Commission's fear that it will lose jurisdiction to require the appellant to furnish necessary facilities for shippers at the towns of Redel, Bucyrus and Stilwell is not well founded. If changed conditions require additional service at either of the towns, the Commission has ample authority to require it. The authority to require reasonably efficient and sufficient service is granted by the provisions of G. S. 1949, 66-107 which reads in part:

"Every common carrier and public utility governed by the provisions of this act shall be required to furnish reasonably efficient and sufficient service, joint service and facilities for the use of any and all products or services rendered, furnished, supplied or produced by such public utility or common carrier. . . ."

The Commission may order improvements in public service or facilities at any time when public convenience and necessity so demand.

The Commission appears to recognize its general authority. It states in its brief:

"In *Norfork & W. R. Co. v. Public Service Com.,* 265 U. S. 70, 68 L. ed. 904, the Supreme Court held that a state in the exercise of its police power either directly or through an authorized commission may require railroads to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. The Court said:

" 'Railroad carriers may be compelled by state legislation to establish stations at proper places for the convenience of their patrons. Minneapolis & St. L. R. Co. v. Minnesota, 193 U. S. 53, 63, 48 L. ed. 613, 618, 24 Sup. Ct. Rep. 396. Any measure promulgated by the state to require a railroad company to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers does not create a new duty or impose any unnecessary burden.' "

A careful examination of the record forces us to conclude that the Commission's order denying the appellant the right to dispense with its agent at the Stilwell station is unreasonable.

The judgment of the district court is reversed with instructions to set aside the Commission's order.

APPROVED BY THE COURT.

FONTRON, J., not participating.