No. 45,817

MISSOURI PACIFIC RAILROAD COMPANY, *Appellee,* v. STATE CORPORA-
TION COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(470 P. 2d 767)

Opinion
filed June 13, 1970.

*P. A. Townsend,* Special Counsel, argued the cause, and *Jack Glaves,* General
Counsel, was with him on the briefs for the appellant.

*Ralph M. Hope,* of Lilleston, Spradling, Gott, Stallwitz and Hope, of Wichita,
argued the cause, and *Glenn D. Young, Jr.,* of Wichita, was with him on the
briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: The Missouri Pacific Railroad Company-appellee

(hereafter referred to as Missouri Pacific or applicant) filed an application with the State Corporation Commission-Appellant (hereafter referred to as the commission) to establish twenty mobile agency routes in Kansas for the purpose of serving customers along its various lines. The effect of the proposed mobile agency routes would be to transfer 110 of Missouri Pacific's agency stations in Kansas into a service system comprising twenty mobile routes served by twenty mobile agents. The system would also include twelve base station agencies. The 110 stations involved in the transition includes thirty-six single agencies and seventy-four dualized (and, in one instance, trialized) agencies. A single agency station is served by one full-time station agent. A dualized agency is two stations served by one agent.

Generally the application proposed to substitute for the present agency services, a traveling agent furnished with a motorized van or, in the case of two routes, a station wagon equipped with a two-way radio and agency office equipment. It was proposed that the traveling or mobile agent would call upon shippers in the communities previously served by station agencies along the various routes. The mobile agency routes generally would follow highways paralleling railroad lines; however, the exact routes to be traveled by the mobile agents were not established. Each route would have a base station from which the mobile agent would start on his route. Each base station would have an Enterprise telephone number which shippers could call at Missouri Pacific's expense.

The application alleged that the handling of shippers' and consignees' "less-than-carload business" by Missouri Pacific "over-the-road trucks and by local draymen" will continue in the same manner as is done at the present time.

The application also alleged that shippers located at previously closed stations on the routes of mobile agents would be called upon at their requests and that they could also call base stations to transact railroad business.

The application further alleged that the business of Missouri Pacific at the single station agencies did not require or justify an agent at each station for eight hours a day, nor did the business at the dualized and trialized stations justify the services of an agent as presently maintained; that public convenience and necessity did not require the continued maintenance of the present services

at the stations in question; that the establishment and maintenance of the mobile agencies would result in a saving of approximately $348,000.00 each year; and that economical and efficient management required that the application be granted.

After the application was filed, the commission appointed Perry L. Owsley as Examiner to hear the evidence and submit recommended findings and conclusions.

On the application of their attorneys, several communities and some shippers on the various routes were permitted to intervene. The first hearing on the application was held in Topeka on March 5-6, 1968. In the ensuing weeks twelve more hearings, at twelve different localities over the state, were had before the Examiner. The hearings were concluded on June 19, 1968.

The Examiner filed his report in which he summarized the evidence of applicant and protestants and submitted extensive recommended findings of fact and conclusions of law. He recommended that the application be denied.

On September 10, 1968, the commission entered its order in which it generally adopted the findings and recommendations of the Examiner and ordered that the application be denied. By its order the commission retained jurisdiction of the matter for the purpose of entering such further orders as it might deem necessary.

Thereafter, Missouri Pacific filed an application for rehearing and reconsideration. On January 29, 1969, the commission filed its order on the application for rehearing. In short the commission found that all of the conclusions of law contained in its previous order were fully supported by the evidence and were affirmed. However, the commision on its own motion found that a rehearing should be granted as to Routes Nos. 1, 2, 3, 5, 15 and 16 in view of the fact that no witnesses appeared in opposition to those proposed mobile routes. As a part of this order, the commission determined that under the provisions of K. S. A. 66-112 hearings should be held at all of the stations involved in the six routes concerned. In all other respects the application for rehearing was denied.

Following the commission's order on rehearing Missouri Pacific filed an application for review pursuant to the provisions of K. S. A. 66-118c in the district court of Osborne County. In its application for review applicant alleged that the commission's order of September 10, 1968, and order on rehearing of January 29, 1969, "inso-

far as they apply to said proposed Routes Nos. 4, 7, 14 and 20, are unlawful, unreasonable, arbitrary, improper, unfair and unjust and that the same should be vacated and set aside."

The commission first attacked the application for review in the district court by a motion to dismiss, which was overruled.

The application for review was submitted on briefs and oral arguments; and, on June 23, 1969, the district court made findings of fact and conclusions of law. In brief, the court found, after reviewing the evidence, that public convenience and necessity does not require the continuance of the present service being rendered by Missouri Pacific at any of the stations located on the four routes involved and that public convenience and necessity would be served by the establishment and maintenance of mobile agency services on the routes as requested by Missouri Pacific.

The court found that the testimony of the witnesses appearing in protest to the establishment of the four mobile agency routes showed at most only some possible inconvenience to individual patrons of applicant, and failed to show that public convenience and necessity required that mobile agency service should not be established at the stations located on each of the four routes involved.

The court further found that the continued maintenance of single or dualized agents at the stations of the four routes, in lieu of service by mobile agents and base stations as proposed by applicant, constituted economic waste which applicant should be allowed to eliminate.

The court concluded that the application of Missouri Pacific involved herein is not one relating to the discontinuance of the services of a railway agent or the closing of a railroad station and, therefore, the provisions of K. S. A. 66-112 had no application to the proceedings. The court further concluded that the commission's orders, as applied to the four routes involved, were arbitrary and unreasonable and should be vacated and set aside. Thereafter, the commission perfected this appeal.

We are first confronted with the commission's assertions that the merits of the controversy are not properly before us and cannot be resolved in this appeal. The commission supports its position with two propositions:

1. The application for rehearing did not comply with the provisions of K. S. A. 66-118b, nor with the requirements of the commission's Rules of Practice and Procedure (K. A. R. 82-1-235 [b]

and [c]), thus applicant was not entitled to judicial review of the order on rehearing and, therefore, the trial court erred in denying the commission's motion to dismiss.

2. Since a rehearing was granted as to six routes; and further since community hearings required by 66-112 had not been held, the judgment of the trial court was premature.

Turning to the commission's first point, obviously the application for rehearing did not comply to the letter with the provisions of 66-118b, nor the requirements of Rule 82-1-235 (b) and (c).

K. S. A. 66-118b provides that an application for rehearing shall set forth specifically the ground or grounds on which the applicant considers the order attacked to be unlawful or unreasonable. Rule 82-1-235, pertaining to rehearings, requires specific and adequate detail in the application in subsection (b) and in subsection (c) requires references when relevant to page numbers and exhibits in the transcript, if one is available. Applicant concedes a transcript was available and that the requirements of the applicable rules were not complied with. In their brief, counsel state that compliance with the rules, within the ten days allotted by the statute, would have been a physical impossibility in this case, in view of the "16 inch thick transcript."

Although we have repeatedly emphasized the importance of the need for the commission to adhere to its own rules (*Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572; *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P. 2d 660), we believe, in the instant case, it is estopped from raising an objection on such ground at this juncture of the litigation. At the commencement of the proceedings, on the application for rehearing, the failure of applicant to comply with the rules was called to the commission's attention by its staff counsel. No ruling was made and the commission proceeded to hear the application, thus waiving any deficiencies or omissions in the application for rehearing.

Turning to the second proposition advanced by the commission wherein it contends the district court's review was premature because a rehearing was granted as to six routes; and further, that with regard to the four routes involved herein community hearings required by K. S. A. 66-112 had not been held.

We fail to see how the fact that a rehearing was granted as to the six other routes affects the litigation concerning the four routes

involved herein. However, the assertion made concerning the application of 66-112 raises a more serious question.

The provisions of 66-112 are mandatory and if applicable to the service change proposed by applicant they could not be waived by either the commission or a court.

The provisions of 66-112, which require our examination, read as follows:

"Whenever notice shall be required by the provisions of this act to be given any common carrier or public utility governed by the provisions of this act, and the complainant, or either of them, thirty days' written or printed notice of the time and place when and where such investigation or hearing will be had shall be given, such notice to be served by mailing a copy thereof to the public utility or common carrier and complainant: *Provided. That all hearings relating to the discontinance of the services of a railway agent or the closing of a railroad station shall be held in the community affected; . . ."* (Emphasis supplied.)

The commission contends that the proposal of applicant would result in the closing of its stations and the discontinuance of the services of a railroad agent as the term is understood. The commission further argues that the trial court's ruling, that 66-112 has no application to the proceedings, constitutes judicial intervention in further and future proceedings conducted by the commission.

Applicant counters the commisison's contentions with a twofold argument. It first claims 66-112 has no applicability whatsoever to a proceeding such as this. This assertion is based on the proposition that the first portion of the act limits the application thereof exclusively to those proceedings where notice to a common carrier or public utility is required by provisions of the Public Utility Act; it then reasons that, since this proceeding stems from an application filed by applicant, no part of 66-112 is applicable. We find no merit in this argument. The first portion of the act deals with the form and service of notice when required. The proviso relating to discontinuance of services, with which we are concerned, deals with hearings and includes *all* hearings relating to discontinuance of agency services or closing of stations, regardless of how or by whom proceedings were initiated.

With respect to these proceedings the applicability of 66-112 depends on whether the present proposal seeks a discontinuance of agency services or the closing of stations within the contemplation of those terms as used in the act.

In findings made as part of an order, entered on March 27, 1968,

following the initial hearing, the commission ruled that further evidence should be heard before a determination could be made as to whether the application sought the closing of a railroad station within the legal meaning of the term.

After hearing all of the evidence, Examiner Owsley determined that 66-112 applied and that a hearing must be held in every community where a station building now exists. The commission, adopted the recommendation of the Examiner and entered its conclusion of law to that effect.

On review, the district court overruled the commission's order and concluded that the application did not relate to the discontinuance of the services of a railway agent or in the closing of a railroad station and thus 66-112 had no application.

The application on its face and the evidence submitted at the various hearings show that although agency services will be substantially altered and limited time-wise, they will not be discontinued. With respect to discontinuance of agency services within the meaning of the proviso, we believe what was said on the subject in *Community of Woodston v. State Corporation Comm.*, 186 Kan. 747, 353 P. 2d 206, resolves the issue here. *Woodston* dealt with a proposal to transform single agency stations into dualized agencies. With reference to applicability of 66-112 we said:

". . . With respect to the hearing of a complaint G. S. 1959 Supp., 66-112 contains directions to the commission to hold all hearings relating to the *discontinuance* of service of a railway agency in the community affected. Here, the very purpose of the application was to keep all the 30 station agencies in operation and not discontinue them, and the order did not discontinue service of a station agency within the meaning of the statute." (p. 755.)

We turn then to the companion question whether the application relates to the closing of a station. On this point we also agree with the view adopted by the trial court. We believe the term "railroad station" has a broader meaning than that apparently attributed to it by the commission. In the discussion found in the case of *In re Brenner*, 151 Kan. 788, 100 P. 2d 688, this court clearly indicated that the concept of a railroad station is broader than that of a mere depot building.

The evidence discloses that the station building would remain for railroad use as storage facility for coopering supplies, grain car doors, etc. True, the traditional business functions of a station agency would no longer be performed in the station building but by the mobile agent in his van or station wagon. However, appli-

cant claims the services offered would be substantially equivalent to the previous services performed (whether they meet the requirements of convenience and necessity is another question). Trains will stop as before and freight will be loaded and unloaded.

We believe the term "railroad station" as used in the act contemplates a point on the railroad line where the business of receiving and discharging freight or passenger service is conducted, and the conduct of this business within the confines of a particular building, is not indispensable to constitute the place a station.

Authority for the view which we have adopted may be found in the following cases from other jurisdictions. *Daniel v. Doyle,* 135 Ark. 547, 204 S. W. 210; *Foster v. Railroad,* 112 Mo. App. 67, 87 S. W. 57; *McGuire v. Railroad,* 113 Mo. App. 79, 87 S. W. 564; *Smithwick v. Illinois Cent. R. Co.,* (Miss.) 32 So. 2d 862.

If 66-112, *supra,* is applied to these proceedings, in line with the reasoning of the commission and the application is, nevertheless, finally approved, an inconsistent situation would result. The application of 66-112 to a proceeding, is based on the premise that if the applicant is successful, agency services are discontinued and the station is closed and, therefore, the termination of whatever railroad services remain would not require a 66-112 hearing. We do not hesitate to say that even though 66-112 hearings are not required in order to establish mobile agencies, their termination, if and when sought, would clearly require hearings in each community as contemplated in 66-112.

In other words, we hold the application of 66-112 is not mandatory in proceedings wherein the establishment of mobile agency routes is sought. We are not saying the commission is not authorized to schedule hearings in any or all communities in which a hearing is deemed necessary, regardless of 66-112 and the applicant concedes this general authority of the commission.

We find no error in the trial court's order overruling the commission's motion to dismiss.

This leads to our examination of the merits of the issues raised on appeal, the overall question being whether the district court was justified under the evidence in reversing the order of the commission.

Meaningful discussion requires a brief description of the four mobile agency routes involved and a summary of the evidence pertaining to each.

Mobile Route No. 4 starts at Concordia, the base station, and

extends generally eastward 82 miles. It will service stations at Clyde, Clifton, Palmer, Linn, Greenleaf, Barnes, Waterville and Blue Rapids. The mobile agent will travel the route in one direction one day and return on the next. All of the stations on Route 4 are dualized at present. Five protestants appeared at the hearing which was held at Blue Rapids.

Mobile Route No. 7 commences at Downs, the base station, and extends generally westward 44 miles through Osborne, Alton, Woodston and Stockton. The mobile agent will make a round trip over the route on Monday, Wednesday and Friday of each week. The stations on Route 7 are dualized. Only one protestant appeared at the hearing on this route. However, he was a substantial shipper. He operated grain elevators at Stockton and Woodston and shipped 212 carloads of grain in 1967.

Mobile Route No. 14 commences at Wichita, the base station, and extends in a northwestward direction 138 miles through Kingman, Turon, Stafford, Hudson and Radium. Stafford and Hudson are dualized, the other stations are presently single agencies. The mobile agent will travel the route one day and return the next. Three witnesses testified in protest to this proposed route. All were substantial shippers originating from 192 to 295 outbound carloads a year.

Mobile Route No. 20 starts at Coffeyville, the base station and eastern terminal, it extends in a northwesterly direction 120 miles through Caney, Sedan, Cedar Vale, Dexter, Winfield and Belle Plaine. At present Belle Plaine and Winfield are single agency stations, the others are dualized. The mobile agent will travel the route one day and return the next. Five protestants appeared at the hearing on this route.

Eighty witnesses testified at the various hearings conducted during these proceedings. Fifteen testified as protestants relating to the four mobile routes involved.

The evidence of the applicant concerning the operations under the proposal was generally uniform as to each of the twenty proposed routes. Likewise, the testimony of protestants expressing their fears and complaints was quite similar with respect to each of the different routes.

We have examined the entire voluminous record, directing our particular attention to the testimony of protestants and that of the applicant concerning the four routes involved.

The protestants for the most part were shippers using the lines involved. With respect to the four routes, with which we are concerned, the majority were either grain elevator operators, farm implement or fertilizer dealers. Their freight business was substantial. Generally, the protestants testified that the innovation of the proposed plan of applicant would hinder and handicap their business operations in that they would be expected to prepare their own bills of lading and in some instances allow loads of grain to move without signed bills of lading; to seal their own cars; to unload cars, which in the case of damaged merchandise would have to be accomplished without the benefit of verification of damage by an agent and thus be placed at the mercy of the railroad insofar as shortages and damage claims are concerned; that they would be delayed in obtaining incoming freight and paying the charges therefor unless they were on the credit list, approved by applicant; and generally that agency service would be available only at the convenience of the railroad and not at their own.

Some grain dealers testified a mobile agent would not be available to sign bills of lading when needed which was important in their business because they needed a signed bill of lading in order to secure a sight draft, and if not available on the day a car was shipped they might have to borrow money to pay customers; also some stated it was necessary to mail a signed bill of lading on the day a car was shipped in order to protect against price changes of grain. Some would not allow a car of grain to move without a signed bill of lading which could delay shipments for one or two days, depending on train schedules.

Most protestants complained because a time schedule had not been established for the mobile agent and they would not know when to expect him. Some testified that the nature of their particular business caused them to be away a part of the time and they could not meet a mobile agent at a given time each day even if the time of the agent's visit were known.

Other witnesses testified that it would be quite inconvenient to contact a base station agent by telephone where, because of their location, it was necessary to place long distance calls through several different telephone exchanges.

A number of the shippers claimed that the mobile agent, under the proposed schedules, would not have time enough to cover his route and give individual customers sufficient time to conduct necessary business.

The principal evidence of the applicant was presented in the form of testimony by Mr. G. M. Holzman, general manager of the western district, of Missouri Pacific, and by Mr. C. W. Watley who, at the time the application was filed, was district superintendent of stations of the western district. Mr. Watley was chairman of the three-man committee that evolved the Mobile Agency Plan proposed in the application.

Generally, applicant's witnesses contended that all services presently available to shippers would be afforded after the mobile agency system was put into operation.

During the course of the hearings, when it was ascertained that some shippers would not move a loaded car without a signed bill of lading, General Manager Holzman testified that an effort was made to ascertain the feasibility of obtaining persons at the various stations who would be authorized to sign bills of lading for applicant. He further testified that four such persons had been contacted and agreed to perform such service. None of the four resided at stations on the routes here involved.

It was admitted by applicant's witnesses that a test run had never been made on any of the four routes involved and that the actual time necessary to conduct business with shippers at each station was an estimate.

In its order the commission reviewed extensively the testimony submitted by protestants and that submitted by the applicant. Findings were made generally in accordance with the testimony of protestants.

Findings, which we believe of particular importance, are as follows:

"4. That local agents at agency stations now provide services to shippers during hours when the depot is closed which mobile agents will not be able to provide.

"5. Local agents conduct the business of the railroad at the convenience of the shippers and under mobile agency plan business of the railroad will be conducted at the convenience of the railroad.

"6. That many shippers will not be available for transacting railroad business when the mobile agent calls at their places of business to conduct railroad business.

"7. That the services of a local agent in ordering cars, notifying in advance of arrival of cars, inspecting cars with shippers, handling correct spotting of cars, tracing cars and obtaining rates would be better than these same services by a mobile agent or by telephone between shipper and base station.

"8. That shippers are entitled to have a Bill of Lading signed by an agent

of the railroad on the same day a car is loaded and ready to be moved and that it would be inconvenient to the shippers to be required to wait until a mobile agent called on them in order to have a Bill of Lading signed.

"9. That the testimony of the railroad to the effect a railroad agent would be available to sign bills of lading when needed by the shipper is speculative and limited.

"14. That the time allotted to the mobile agent to conduct the railroad's business on some of the routes is insufficient. That the hours of service by a mobile agent to customers of the railroad would be much less than the hours of service of a local agent.

"16. That much of the testimony of the railroad as to more efficient service under the mobile agency plan is speculative."

In its order denying the application for rehearing, the commission generally reaffirmed findings and conclusions made in the original order, with the exception that on its own motion a rehearing was granted as to the six routes which we have previously mentioned. The commission declared that its original findings and conclusions were fully supported by the evidence and the law.

In conclusion No. 5 of its order on rehearing the commission frames the underlying issue in this controversy and resolves it as follows:

"Although by its findings of fact No. 2 this Commission found that the applicant would make a monetary savings in operating expenses by the establishment of Mobile Agencies in Kansas, the Commission finds as a matter of law that the amount of said savings under the evidence is 'speculative and viewing applicant's evidence in its most favorable light neither warrants nor justifies a finding that the continued operation and maintenance of the agencies here involved as presently maintained would require an unjustifiable expenditure of money by the applicant or constitute waste or impose an unlawful and/or undue burden upon applicant when viewed in the light of public convenience and necessity and the duty of the applicant to furnish reasonably efficient and sufficient service."

The findings of the trial court on review consisted largely of a recitation of the evidence generally in accordance with what we have related. The court did not point out any instances where the commission failed to consider evidence of the applicant or, on the other hand, where any evidence of protestants was overvalued. Neither did the court point out any evidence improperly considered by the commission nor did it specify any particular finding of fact that was not supported by evidence. In sum and substance, the trial court considered the same evidence but arrived at ultimate facts and conclusions in sharp conflict with those reached by the commission.

The trial court put emphasis on testimony of the applicant's officials to the effect that all services now rendered could and would be rendered by the mobile agents when they called on the patrons each day, and in addition patrons could obtain essentially all of the services now rendered to them by the single and dualized agents by telephoning the base station agent. There was, as we have pointed out, considerable testimony of protestants to the contrary upon which the commission based its findings Nos. 4 to 16, inclusive.

The trial court specifically found in its finding No. 13 "that applicant's mobile agents can perform the services required at all of the stations upon the various routes within the times provided therefore." The finding squarely contradicts the commission's finding No. 14. The only explanation by the trial court is that the highway speed of the mobile agent would exceed the thirty miles an hour, allotted by applicant's estimate, thus making more time available for patrons' business. The trial court indicated uncertainty in this regard by finding that the applicant would make changes if time provided was insufficient. The commission's finding is supported by the testimony of several substantial shippers that the time allotted for the transaction of customers' business was clearly inadequate.

With respect to bills of lading, the trial court found that some shippers would not permit a loaded car to move without a signed bill of lading and that other shippers desired one signed as soon as possible in order to secure a sight draft to meet immediate financial obligations. The trial court then avoided the issue by finding that applicant would have no difficulty in finding agents to sign bills of lading, although there was no evidence that any such agents had been secured or contacted on any of the four routes involved here. On the other hand, the commission found that prospects of having an agent available for such purpose was speculative and limited.

Without further comparison of the findings of the trial court with those of the commission, it may be said that, in their respective capacities, they arrived at divergent conclusions from the same evidence with no ostensible explanation of the disparity appearing in the record.

This leads to an examination of the function and scope of judicial review and the rules governing the application thereof in testing the reasonableness of an order of the commission.

Judicial review of a commission's order is authorized by K. S. A. 66-118c and the nature and scope thereof is spelled out in K. S. A. 66-118d, which in pertinent part reads:

". . . Said proceedings for review shall be for the purpose of having the lawfulness or unreasonableness of the original order or decision or the order of decision on rehearing inquired into and determined, and the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . ."

We have disposed of the only suggestion of unlawfulness which was the commission's own assertion that compliance with 66-112, *supra,* was necessary as a matter of law. Therefore, we are confronted only with the question whether the conclusion of unreasonableness is justified by the record.

The meaning of the term "unreasonable" as used in the statute has been considered in numerous opinions of this court dealing with commission orders. Early decisions dealing with the subject are collected and discussed in the case of *Southern Kansas Stage Lines Co. v. Public Service Comm.,* 135 Kan. 657, 11 P. 2d 985, wherein many synonyms for the term "unreasonable" are listed by Justice Dawson who then presents a framework for judicial review in this language:

". . . It is only when such determination is so wide of the mark as to be outside the realm of fair debate that the courts may nullify it. The same regard should be given to the informed conclusions of fact made by the public service commission. Where its findings of fact are based upon substantial evidence and the other matters shown by the record with which that tribunal is authorized to deal, a court is not justified in setting its orders aside because the record shows that a different order or decision than the one made by the commission could fairly have been based thereon. Indeed, there are narrow limits to the authority which the legislature could confer on the court to deal with the sort of powers which may properly be vested in an official board like the commission." (p. 662.)

The guidelines laid down by Justice Dawson for judicial testing of the reasonableness of an order of the commission have been recognized in many later cases. The language used by Justice Dawson was closely followed by Justice Schroeder speaking for the court in *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.,* 182 Kan. 603, 322 P. 2d 715:

"It may be said that an order of the Commission is unreasonable if under all the circumstances it is unfair, unwise and unjust. This question must be determined by the trier of the facts. It is only when such determination by the trier of the facts finds the order so wide of the mark as to be outside the realm of

fair debate that the courts may nullify it. The same regard should be given to the informed conclusions of fact made by the Commission. . . ." (p. 611.)

Our most recent pronouncement is found in *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 440 P. 2d 660, wherein after a comprehensive summarization of cases, pertinent statutes and rules of the commission, Justice Fatzer speaking for the court said:

"The proceding on judicial review is not a trial, as that term is used in the code of civil procedure. The proceeding is tried before the commission in its entirety where the commission hears the witnesses and takes all the evidence. (K. S. A. 66-118d.) The review by the district court is solely upon the record made before the commission 'for the purpose of having the lawfulness and reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined,' and 'the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable.' But '[n]o court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided.'* (emphasis supplied).

. . .

"As indicated, the end result of judicial review is to determine whether the commission's order is lawful or reasonable. In making such review, the district court is required to search the record to ascertain whether there is substantial evidence to support the basic findings of fact of the commission, and it is not authorized to substitute its judgment for findings of the commission if the matter is within the realm of fair debate. . . ." (pp. 233, 234.)

The responsibility of this court in reviewing district court judgments in such cases is set out in *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, 386 P. 2d 515, in these words:

"The district court in reviewing an order of the Commission acts in an appellate capacity.

"This court, on appeal from the district court in such cases, is reviewing the propriety of the decision of an inferior appellate tribunal. The legislature has not defined the limits or responsibility of this court on appeal. However, its responsibility is apparent. It must review the record for the purpose of determining whether the district court observed the requirements and restrictions placed upon it by statute. (*Thompson v. Commerce Com.*, 1 Ill. 2d 350, 115 N. E. 2d 622.)

"The statute providing for proceedings on appeal from an order of the Commission is a directive to the district court as to the nature and extent of its review, and on appeal to the Supreme Court it must determine whether the district court has properly determined the matters to which its powers and duties extend. (*Birmingham Electric Co. v. Alabama Pul. Serv. Com'n.*, 254 Ala. 140, 47 So. 2d 455.)" (p. 49.)

The above discussed principles and rules govern the functions of the trial court on review and this court on appeal, keeping them in mind, we shall consider some additional principles established

by this court which we believe particularly applicable to these proceedings.

This is the first appearance before this court of a proceeding in which a railway carrier seeks authority to serve its freight customers by mobile agencies. Applicant makes no claim that it is sustaining losses at the stations involved, it candidly declares that its application is based upon its desire to eliminate unnecessary expense while continuing to render adequate service to the public. Our reading of the record reveals that much can be said in favor of applicant's efforts to perfect a more economical and efficient system for affording agency services. This court has recognized the principle that it is the function of the commission to aid in the elimination of unnecessary expenditures, not to prepetuate them, and to require maintenance of operations where need for service no longer exists, constitutes economic waste which the commission was created to eliminate. Where the commission has ignored this principle or failed to weigh costs against loss of public benefits or insisted on continuance of services in the absence of public need, the abuse of regulatory authority has been consistently curbed by judicial intervention. (*Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.*, supra; *Cities Service Gas. Co. v. State Corporation Commission*, supra; *Missouri Pacific Rld. Co. v. State Corporation Commission*, 192 Kan. 575, 389 P. 2d 813.

Where a railroad sought to discontinue an agency station in *Missouri-Kansas-Texas Rld. Co. v. City of Savonburg*, 186 Kan. 120, 348 P. 2d 1015, we employed a test expressed in these terms:

". . . In determining the question where an absolutely necessary service is not involved, an important test is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad of continuing such agency. In other words, whether the economic waste, if any, caused by the operation of the agency outweighs the the benefits and convenience to the public. . . ." (p. 127.)

See, also, *Atchison, T. & S. F. Rly Co. v. State Corporation Comm.*, 182. 603, 322 P. 2d 715.

The findings and conclusions of the commission and the trial court reveal that each employed, in substance, the test referred to above.

The commission weighed the savings which might be accomplished by applicant against public convenience and necessity and the duty of applicant to furnish reasonably efficient and sufficient service (K. S. A. 66-107) and found the balance adverse to applicant.

The trial court on the other hand concluded the economic gain of applicant would outweigh the loss of benefits and convenience to the public, resulting from mobilized agencies.

Boiled down to simple terms, the ultimate question is whether the issue should be resolved by regulatory or judicial determination. The answer must be that where the reasonableness of a commission order is a matter in the realm of fair debate, the court should not substitute its judgment for that of the commission. (*Southwestern Bell Tel. Co. v. State Corporation Commission,* supra; *Atchison, T. & S. F. Rly Co. v. State Corporation Comm.,* supra; *Southern Kansas Stage Lines Co. v. Public Service Comm.,* supra.)

There was testimony by substantial shippers on each of the four routes involved to the effect that their shipping operations would be seriously inconvenienced and, in some cases concerning the signing of bills of lading, financial hardship would result. The freight business furnished applicant by the shippers on these four routes raises their need and convenience far above the convenience of an individual doing a limited business as in the case of *Missouri Pacific Rld. Co. v. State Corporation Commission,* 192 Kan. 575, 389 P. 2d 813.

We believe the trial court understood and performed its function in searching the record and measuring the commission's findings against the evidence from which they were deduced in testing the reasonableness of the commission's order. But it is only when the commission's order is found to be so wide of the mark as to be outside the realm of fair debate that courts may nullify it. (*Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.,* supra.)

We think the rule stated is clearly applicable to the issue developed in this case and it compels our conclusion that the commission's order must be sustained.

The judgment of the district court is reversed with instructions to reinstate the commission's order, except that portion dealing with K. S. A. 66-112.

SCHROEDER, J., dissenting: In my opinion the trial court properly found the action of the State Corporation Commission, denying the Missouri Pacific Railroad Company's application to substitute service by mobile agency routes for services presently afforded by single and dualized station agencies, was arbitrary and unreasonable.

On appeal to this court the commission contended the proposal of the railroad company would result in the closing of its stations and the discontinuance of the services of a railroad agent as that term is understood. The trial court concluded the application of the railroad company involved herein "is not one relating to the discontinuance of the services of a railway agent or the closing of a railroad station." (p. 613.) On this point the court in its opinion *affirms* the trial court.

It must, therefore, be assumed the findings made by the commission were all premised upon the assumption the proposal of the railroad company would result in the closing of its stations and the discontinuance of the services of a railroad agent at the stations involved.

Obviously, under these circumstances, the court in its opinion has had a difficult time walking the tight rope to the other side— affirming the trial court on the point above mentioned, but reversing as to its finding of arbitrary and unreasonable conduct on the part of the commission. Among other things, the court in its opinion resorts to a discussion of negative evidence. For example, it says, "Applicant makes no claim that it is sustaining losses at the stations involved." (p. 625.) Actually, the railroad company claims it will be saving approximately $348,000 each year, and that the economical and efficient management of the railroad requires that its application be granted.

Governmental agencies sometimes forget that under our form of government economic activity is conducted under the free enterprise system. This simply means that after all of the expenses are paid, the business must continue to operate on the meager profits remaining.

This court has recognized it is the function of the State Corporation Commission to aid in the elimination of the unnecessary expenditures, not to perpetuate them; and to require maintenance of operations where need for service no longer exists constitutes economic waste which the commission was created to eliminate. Where the commission has ignored this principle or failed to weigh costs against loss of public benefits, or insisted upon continuance of services in the absence of public need, the abuse of regulatory authority has been consistently curbed by judicial intervention. (*Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.*, 182 Kan. 603, 322 P. 2d 715.)

The findings of the commission upon which this court places reliance are all based upon *the refusal of the commission to attribute good faith to the railroad company's proposals.* Giving full faith to these proposals, the railroad agent's services are as close to the shipper as his telephone. He will have an agent available to sign bills of lading at the point of shipment. Under the railroad's proposal the need to have bills of lading signed immediately for the shipper upon a consignment of goods would be met by designating a local banker or other businessman to be the agent of the railroad for this purpose.

The commission, by finding many of the proposals made by the railroad company to be speculative, is simply refusing to attribute good faith to its proposals. If such findings were sufficient to uphold the commission's action, the railroad would be forced to the expense of investing in its mobile agency units; it would be required to make binding arrangements at local shipping points for limited agency services; and it would have to conduct a trial run for a period of time to demonstrate the soundness of its proposals. Obviously, in the interest of economics, this was not done by the railroad. It first sought the approval of the commission before making such changes, as it should do.

If the commission is permitted to grant or deny a proposal to eliminate waste in the operation of a railroad simply upon a determination of the applicant's good faith in submitting the proposal, there is no need to hear those who protest the proposal. In my opinion the commission is required, absent evidence to the contrary, to attribute good faith to a proposal such as the one presently under consideration. Otherwise it could lawfully exercise arbitrary power.

In the event the proposal were to be granted by the commission and deficiencies or problems were experienced, the commission has the power to direct corrective measures. So it may fairly be said the shield of speculation behind which the commission seeks refuge is little more than an attempt to cover its arbitrary and unreasonable action.

Here the trial court found, and properly on the record, that the commission arbitrarily and unreasonably denied the railroad the right to eliminate economic waste in the operation of its railroad, in a situation where this court found, upon the record, that granting the proposal would not result in the discontinuance of the services of a railway agent or the closing of a railroad station.

The court in its opinion places considerable weight upon the testimony given by shippers who testified in protest; this, of course, to bolster its inconsistent position. Obviously, those who have protested the proposal of the railroad company are doing so without any experience whatever in the shipment of their goods under the proposal suggested. Their testimony at best under these circumstances is purely speculative.

Reviewing this case beginning with the proceedings before the commission, the action taken by the trial court, and the opinion written for the court, it is readily apparent the whole case is based upon a finding by the commission that the applicant's proposal to create mobile agency routes would result in the closing of the railway company's stations at the points in question and the discontinuance of the services of a railroad agent. When this finding was exposed by the trial court as erroneous, and affirmed by this court on appeal, the whole basis for the commission's action collapsed.

It is respectfully submitted the judgment of the lower court should be affirmed.